UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE ALFREDO MORALES,

                Plaintiff,

                                          **REPORT AND**
                                          **RECOMMENDATION**
                                          19-CV-1323 (JS) (ARL)

        -against-


MS. FLUDD (SHERIFF); NASSSAU COUNTY
CORRECTIONAL CENTER; C.O. HOLT;
C.O. CARR; JOHN DOE #1 (C.O.),

                Defendants.
------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

        Plaintiff Jose Alfredo Morales ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Nassau County Sheriff Vera Fludd ("Sheriff Fludd"), Corrections Officer Holt and Corrections Officer Carr, and an unidentified corrections officer named as "John Doe" ("C.O. Doe" and together with Corrections Officers Holt and Carr, the "C.O. Defendants"). Before the Court, on referral from District Judge Seybert, is Plaintiff's motion to amend the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 15. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion be granted, in part, denied, in part.

                                          **BACKGROUND**

       The following facts are taken from the complaint and are assumed true for purposes of this motion. Between July 2018 and April 2019 Plaintiff was incarcerated at the Nassau County Correctional Center (the "NCCC"). Plaintiff alleges that he was jumped by various groups of inmates on September 16, 2018, January 7, 2019 and January 8, 2019 and that he was injured as

a result thereof. Compl. ¶ II. It is Plaintiff's contention that, rather than assist Plaintiff when he was assaulted, the corrections officers punished Plaintiff, placing him in a headlock and spraying him with mace. *Id.*

The original complaint in this action was filed on March 6, 2019 and asserts a claim for violation of Section 1983 based upon the actions of Corrections Officers Holt and Carr. Simultaneous with filing the complaint, Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. By Memorandum and Order dated July 18, 2019 ("Order"), the district court granted Plaintiff's application to proceed *in forma pauperis*, but *sua sponte* dismissed Plaintiff's claim against the NCCC, with prejudice, and dismissed Plaintiff's claim against Sheriff Fludd without prejudice. Judge Seybert dismissed Plaintiff's claim against the NCCC with prejudice because "[it] is well-established that 'under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'" Order at 6 (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)). With respect to Sheriff Fludd, Judge Seybert ruled that "[i]n order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation." Order at 5 (citing *Farid v. Elle*, 593 F.3d 233, 249 (2d Cir. 2010)). Because Sheriff Fludd was not mentioned in the body of Plaintiff's complaint, Judge Seybert held that Plaintiff's claim against Sheriff Fludd was not plausible and was dismissed without prejudice. Order at 6. With respect to the remaining defendants, Judge Seybert held that "though thin, Plaintiff's claims against C.O. Holt, C.O. Carr and C.O. Doe shall proceed." Order at 9.

Pursuant to that Memorandum and Order, the C.O. Defendants were directed to provide Plaintiff with the identity of Corrections Officer John Doe. Following an investigation by the C.O. Defendants, the Court was advised that they were unable to determine the officer involved in the incident on January 7, 2019. On October 31, 2019, the District Court ordered that the action was to proceed as to Corrections Officers Holt and Carr and "[i]f additional information during discovery aids the parties in identifying defendant John Doe #1, Plaintiff shall be permitted to amend his Complaint."

The C.O. Defendants filed their answer on November 20, 2019. This Court entered a scheduling order on November 22, 2019, pursuant to which, the parties had until March 25, 2020 to move to join additional parties or to amend the pleadings. ECF No. 20.[1] On January 2, 2020, Plaintiff filed the instant motion for leave to amend, attaching the Proposed Amended Complaint ("PAC"). The C.O. Defendants have not opposed Plaintiff's motion. By Order dated January 10, 2020, Judge Seybert referred Plaintiff's motion to amend to the undersigned for an Order.

Plaintiff's amendment seeks to reassert a claim against Sheriff Fludd and also names eighteen additional defendants, to wit, Captain Donahue, Chief Administrative Officer, Lieutenant Kruger, Administration Segregation Officer, Lieutenant O'Mally, Lieutenant McGovern, Sergeant Kwarta, John Does 1 through 12, and Corporal Petterson. PAC at p.1-5.

Plaintiff adds new allegations relating to his placement in different units of the NCCC between July 2018 and April 2019 and an alleged failure on the part of various corrections officers to house him in units where he would not be the target of gang violence, because according to Plaintiff, he is a labelled gang member in the NCCC database. *Id.* at p.7. Plaintiff

---

[1] Pursuant to that same scheduling order, Plaintiff was directed to file a written narrative statement of facts by January 6, 2020 which he did. The C.O. Defendants were directed to file a written narrative of the facts by February 17, 2020, which they have failed to do.

complains that sometime between July and August 2018, Corporal Petterson attempted to place Plaintiff in a unit which housed a majority of rival gang members, Plaintiff informed Corporal Petterson as well as John Doe 11 that he could not be placed in that unit because he was a rival gang member. *Id*. at p.7-8. Plaintiff also claims the John Does 11 and 12 then tried to force Plaintiff to agree to the option of being placed in Administrative Segregation or protective custody, which he refused. *Id*. at 8. Ultimately, the officers relented and Plaintiff was placed in a general population unit, rather than the original unit housing the rival gang members. According to Plaintiff, these actions were "malicious and a risk on [his] health." *Id*.

Additionally, Plaintiff alleges that Officers Donahue and Kruger improperly placed him with administrative segregation inmates although he retained his designation as a general population inmate. *Id*. at p. 9. Plaintiff alleges he remained in this unit for approximately two weeks. *Id.*

Further, according to Plaintiff, on September 14, 2018, Plaintiff was attacked by a fellow inmate. According to Plaintiff, the Correction Officers in charge, Sergeant Kwarta and Lieutenant O'Mally, failed to notify gang intelligence of the incident. *Id*. at 10. Plaintiff claims that a follow up attack the attack on September 16, 2018, would have likely been avoided had the gang unit been notified of the September 14th incident. *Id*. at p. 10.

In Plaintiff's original complaint, as well as in the PAC, Plaintiff details an attack occurring on September 16, 2018. Plaintiff claims to have been attacked by five inmates in retaliation for the altercation of September 14th. Plaintiff also alleges that following the attack on September 16th, Sergeant Kwarta failed to "handle the situation as fit" because Plaintiff was placed in Administrative Segregation, rather than being housed in medical. *Id*. at p. 11. Plaintiff alleges that following this last attack his phone calls were recorded and his personal mail

intercepted. *Id*. Plaintiff claims he was repeatedly placed in close proximity to two inmates, whom he names, with whom who had had prior altercations. *Id*. at p.p. 9-15. According to Plaintiff, he and his attorney raised his concerns regarding the conditions of his confinement and his treatment at a court hearing before Judge David Sullivan. Plaintiff alleges that Sheriff Fludd was made aware of Plaintiff's complaints about by Judge David P. Sullivan and that Sheriff Fludd nevertheless "neglected to put a definite separations" between Plaintiff and his "no contacts" in violation of his Fourteenth Amendment rights. *Id*. at p. 11-12. According to Plaintiff, "[a]fter getting out of B.M.U. and off of Administrative Segregation with gang intelligence knowing John Doe 7 and John Doe 8, C.A.O. Captain Donahue, Lt. Kruger, Sheriff Fludd, all aware that my no contacts and individuals that they are aware of that have issues with neglected to put definite separation they gambled with my safety and well-being." *Id*. at p.12.

      Plaintiff points to two more attacks by other inmates, which occurred in January and February of 2019 which he asserts resulted from the failure of the responsible officers to keep him separated from rival gang members and others on his no contact list. *Id*. at p.p. 13-14. Plaintiff alleges that on January 8, 2019 he was returning from the medical unit at the same time as other inmates were being moved from the yard to the housing units. John Doe 3 opened the stairwell door and instructed Plaintiff to return to his floor. *Id*. at p. 14. While in the stairwell Plaintiff was attacked by several inmates, including inmates on his "no contact" list. *Id*. According to Plaintiff, following an incident on January 8, 2019, he was put "on 'Escort everywhere'" which he claims should have happened sooner.

      In February 2019, while waiting to go to Court, Plaintiff claims to have overheard Corporal Petterson informing transport officers John Does 9 and 10 that Plaintiff has issues with

5

certain inmates. Nonetheless, John Does 9 and 10 placed Plaintiff was placed in the same bull pen with individuals on his no contact list and he was attacked. *Id*. at p. 15.

Plaintiff claims that as a result of the attack on September 16, 2018, he received a two-inch gash in his head requiring three staples as well as minor cuts. *Id.* at p. 10. Additionally, Plaintiff claims to have suffered a number of minor injuries and continues to suffer from recurrent headaches, lower back pain and emotional distress stemming from his need to constantly protect himself, mental anguish from the treatment of the guards, and depression from "being scared for my safety." *Id*. at p. 15.

## DISCUSSION

### I. Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Rule 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a)(2). Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Rule 15(a)(2). When a proposed amendment seeks to add new parties, the propriety of the proposed amendment is governed by Federal Rule of Civil Procedure 21 which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see Addison v. Reitman Blactop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011). In deciding whether to permit the addition of defendants under Rule 21, "courts apply the same

6

standard of liberality afforded to motions to amend pleadings under Rule 15." *Addison*, 283 F.R.D. at 79 (citations and internal quotation marks omitted). "Thus, leave to amend a complaint to assert claims against additional defendants 'should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court.'" *Id.* (quoting *DeFazio v. Wallis*, No. 05–CV–5712, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006)).

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Rule 12(b)(6). *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Where, as here, the complaint was filed *pro se*, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman*

7

*v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh*, No. 13–CV–5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014).

**II.     Analysis**

Plaintiff seeks to assert a claim under Section 1983 against Sheriff Fludd and the proposed new defendants for violation of his Fourteenth Amendment right to due process.  PAC at p.12.  To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  As recognized by Judge Seybert, "[i]n order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation."  Order at 5 (citing *Farid v. Elle*, 593 F.3d 233, 249 (2d Cir. 2010)).

While Plaintiff's Proposed Amended Complaint describes his movement from one unit to the next and details altercations with other inmates, the constitutional violation which the Court discerns arises from allegations that the corrections officers failed to protect him from injury from other inmates in violation of the Fourteenth Amendment.[2]  PAC at p.12.  A convicted

---

[2] To the extent Plaintiff's Proposed Amended Complaint may be interpreted as a complaint regarding movement from one unit to the next without due process, such a claim would be subject to dismissal.  *See, e.g., Covino v. Vermont Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir. 1991) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is not a right protected by the due process clause itself.") (internal citation and quotation marks omitted); *Corley v. City of New York*, 14 Civ. 3202 (GHW), 2017 U.S. Dist. LEXIS 162761, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (plaintiff has no liberty interest in assignment to a particular unit).

8

prisoner's conditions of confinement claim is governed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Given Plaintiff's *pro se* status, the Court will construe Plaintiff's claim as one for violation of the Eighth Amendment. *See James v. Suffolk Cty. Corr. Facility*, No. 13-CV-2344, 2018 U.S. Dist. LEXIS 107775 at * 28, 2018 WL 3966688 (E.D.N.Y. June 26, 2018) ("Although none of these claims is expressly pled in the Amended Complaint, the Court addresses each one in turn in light of Plaintiff's pro se status").

"Although 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners,' 'not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Carbone v. Cnty. of Suffolk*, No. CV-10-3631 (SJF)(AKT), 2013 U.S. Dist. LEXIS 49003, 2013 WL 1386251, at *5 (E.D.N.Y. Apr. 2, 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "Pursuant to *Farmer*, an inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan v. Dzurenda*, Docket No. 18-2888, 2020 U.S. App. LEXIS 11863 (2d Cir, April 15, 2020) (quoting *Farmer*, 511 U.S. at 834). *See also Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).

"To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). A Section 1983

claim predicated on a violation of the Eighth Amendment does not lie for conduct that is merely negligent. *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process")).

"The 'deliberate indifference standard embodies both an objective and a subjective prong.'" *Morgan*, 2020 U.S. App. LEXIS 11863 at * 7 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). For a claim based on a failure to prevent harm, the objective element requires the inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970; *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar*, 683 F.3d at 57 (quotations, alterations and citation omitted). "[P]risoners may not be deprived of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety— and they may not be exposed to conditions that pose an unreasonable risk of serious damage to their future health." *Id.* (quotations and citations omitted). "The objective prong may be satisfied where an inmate is subjected to violent acts at the hands of other inmates." *Liverpool v. Davis*, No. 17 Civ. 3875 (KPF), 2020 U.S. Dist. LEXIS 33237 at *27, 2020 WL 917294 (S.D.N.Y. Feb. 26, 2020) (citing *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (holding that "an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action")).

10

Under the subjective requirement, a defendant "'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 837); *Liverpool*, 2020 U.S. Dist. LEXIS 33237 at *27 ("a plaintiff must allege facts showing that a defendant knew of and disregarded an excessive risk of inmate health and safety or that he was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed"). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston,* 249 F.3d at 164; *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 U.S. Dist. LEXIS 19266, 2015 WL 667528, at *4 (S.D.N.Y. Feb. 17, 2015) (same); *Reid v. Nassau Cty. Sheriff's Dep't,* No. 13-CV-1192, 2014 U.S. Dist. LEXIS 117471, 2014 WL 4185195, at *17 (E.D.N.Y. Aug. 20, 2014) (same). "Allegations of mere negligence by prison officials will not support a claim under the Eighth Amendment." *Thomas v. DeMeo*, No. 15-CV-9559, 2017 U.S. Dist. LEXIS 138036, 2017 WL 3726759, at *5 (S.D.N.Y. Aug. 28, 2017).

"Courts have found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 U.S. Dist. LEXIS 105214, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), adopted, 2012 U.S. Dist. LEXIS 105216, 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Tubbs v. Venettozzi*, 9:19-CV-

11

0126 (LEK/DJS), 2019 U.S. Dist. LEXIS 106751, 2019 WL 2610942 (N.D.N.Y. June 26, 2019) (a failure-to-protect claim requires the plaintiff "allege[] that he informed [the prison official] about a specific fear of assault and [was] then assaulted"); *Stewart v. Fisher*, 11 Civ. 2184 (HB), 2011 U.S. Dist. LEXIS 142764, 2011 WL 6153084 at *4 (S.D.N.Y. Dec. 12, 2011) (Plaintiff's allegations show at the very least that prison officials knew of a substantial risk prior to the attack and failed to take reasonable measures to abate the harm); *Beckles v. Bennett*, 05 Civ. 2000 (JSR), 2008 U.S. Dist. LEXIS 24819, 2008 WL 821827 at *17 (S.D.N.Y. Mar. 26, 2008). *But see Rivera v. New York*, 96 Civ. 7697 (RWS), 1999 U.S. Dist. LEXIS 129, 1999 WL 13240 at *9 (S.D.N.Y. Jan. 12, 1999) ("communicating vague concerns of future assault by unknown individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate"); *Fernandez v. New York City Dep't of Correction*, 08 Civ. 4294 (KMW), 2010 U.S. Dist. LEXIS 29686, 2010 WL 1222017 at *4 (S.D.N.Y. Mar. 29, 2010) (absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks").

Generally, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S. Ct. 1970. "For example, if a[] . . . plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual

knowledge of the risk." *Id*. at 842-43, 114 S. Ct. 1970 (quotations and citation omitted). "A plaintiff may state a claim for deliberate indifference based upon a failure to protect by alleging, inter alia, . . . 'that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff.'" *Henry v. County of Nassau*, No. 13-CV-7427, 2015 U.S. Dist. LEXIS 62652, 2015 WL 2337393, at *4 (E.D.N.Y. May 13, 2015) (quoting *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013)).

Here, Plaintiff alleges that he was repeatedly placed in close proximity to either rival gang members or individuals with whom he had prior altercations and that the corrections officers involved were all aware of these issues. PAC at pp. 7-15. However, with respect to Captain Donahue and Lieutenant Kruger, Plaintiff specifically alleges only the Lieutenant Kruger warned Plaintiff to behave or face placement in Administrative Segregation (*id*. at p. 8), and that both directed he be housed within the Administration Segregation unit even though he was general population (*id*. at p. 9) and required him to return to Administration Segregation after he was attacked on September 16, 2018 (*id*. at p. 10). According to Plaintiff, Captain Donahue, Lieutenant Kruger and C.O. McGovern violated Plaintiff's Fourteenth Amendment rights by placing him in Administrative Segregation without a hearing.[3] *Id*. As noted above, movement from one unit to the next without due process, does not state a claim under Section 1983. *See, e.g., Covino*, 933 F.2d at 129 ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is not a right protected by the due process clause

---

[3] Plaintiff claims that Captain Donohue and Lieutenant Kruger violated his constitutional rights by "being oversee [sic] of Administration." PAC at p. 12. This language could be construed as asserting a claim for supervisory liability, however, Plaintiff nowhere alleges that these "defendants improperly allowed a subordinate prison official to commit a constitutional violation. The doctrine of supervisory liability is therefore not implicated." *Morgan*, 2020 U.S. App. LEXIS 11863 at * 9.

13

itself.") (internal citation and quotation marks omitted); *Corley*, 2017 U.S. Dist. LEXIS 162761 (plaintiff has no liberty interest in assignment to a particular unit).  Nothing in the record suggests this placement was punitive and as such the undersigned respectfully recommends that Plaintiff's motion to amend the complaint to add Defendants Donohue, Kruger and McGovern be denied.

With respect to C.O.s O'Mally and Kwarta, Plaintiff alleges that these C.O.s failed to notify gang intelligence of an attack on September 14, 2018, which may have prevented an attack on September 16, 2018.  PAC at p. 9-10.  This allegation is also insufficient to state a claim.  First, Plaintiff does not allege that the attack on September 14, 2018 was gang related. Second, even if Plaintiff's pleading could be interpreted as inferring that the attack was gang related, the allegation that notifying gang intelligence of the first attack would have prevented the second attack is mere conjecture and does not support a claim that his constitutional rights were violated by this delay. Similarly, with respect to John Does 11 and 12, Plaintiff fails to point to any conduct giving rise to a constitutional violation.  Plaintiff alleges that sometime between July and August of 2018, his housing unit was closed for unknown reasons.  According to Plaintiff, Corporal Petterson directed that plaintiff be moved to a unit which plaintiff asserts was known to be occupied by MS-13 gang members. When plaintiff refused to be placed in that unit, John Doe 11 threatened him with administrative segregation.  John Doe 12 was the assigned movement officer.  Plaintiff expressed his belief to John Doe 11 that plaintiff was being threatened with administrative segregation because of charges he brought against another officer. PAC at 8.  Ultimately, Plaintiff prevailed and he was placed in general population where he chose to be housed.  *Id.* at p. 8.  Next, Plaintiff alleges with respect to Corporal Petterson that he advised John Does 9 and 10 to keep Plaintiff away from inmates on B4.  *Id*. at p. 14.  None of the

14

above allegation satisfies the standard that Plaintiff "allege[] that he informed [the prison official] about a specific fear of assault and [was] then assaulted." *Tubbs*, 2019 U.S. Dist. LEXIS 106751. Thus, the undersigned respectfully recommends that Plaintiff's motion to amend the complaint to add Defendants Kwarta, O'Mally, Petterson and John Does 11 and 12 be denied.

Plaintiff alleges that John Does 7 and 8 were working for gang intelligence and were aware that Plaintiff was looking into who attacked him on September 16, 2018. *Id*. at p. 11. Plaintiff alleges that because of this knowledge they gambled with his safety by failing to put in a definite separation between him and others that may be a danger to him. However, Plaintiff fails to allege that John Does 7 and 8 actions caused any specific injury to Plaintiff. He alleges only generally that because of their position they were aware of threats. Once again this fails to give rise to a constitutional violation. Thus, the undersigned respectfully recommends that Plaintiff's motion to amend the complaint to add John Does 7 and 8 be denied.

With respect to John Does 2-6, Plaintiff alleges that these proposed defendants failed to radio ahead to generically acknowledge a recreation movement, which would have alerted others in the building as to inmate movement. This allegation at best amounts to nothing more than mere negligence and cannot support a constitutional violations. *See, e.g., Thomas*, 2017 U.S. Dist. LEXIS 138036. However, with respect to John Doe 3, Plaintiff alleges further that John Doe 3 opened a stairwell doorway and instructed Plaintiff to enter the stairwell, which was already occupied by several inmates on his no contact list. PAC at p. 14. At this stage in the proceedings "[t]he court should freely give leave [to amend] when justice so requires." Rule 15(a)(2). Plaintiff has satisfied this liberal standard with respect to the claims to be asserted against John Doe 3, particularly in light if the County's failure to object to the proposed

15

amendment. *See, e.g., Lurch v. Bui*, 2020 U.S. Dist. LEXIS 42016 (N.D.N.Y. Mar. 10, 2020) (allowing *pro se* failure to protect claim to go forward on thin allegations at the pleading stage); *Wilson v. United States*, 2019 U.S. Dist. LEXIS 219737 (*pro se* Plaintiff allowed to amend the complaint to assert claim against corrections officers based upon a failure to protect claim). Thus, the undersigned respectfully recommends that Plaintiff's motion to amend the complaint to add John Does 2, 4, 5 and 6 be denied, and the motion to add John Doe 3 be granted.

Plaintiff also seeks permission to add John Does 9 and 10. He alleges that John Does 9 and 10 were informed by Corporal Petterson that Plaintiff should not be placed with inmates from the B4 Unit, however, Plaintiff was placed in a bull pen with those inmates and was attacked. PAC at p. 14. Although thin, this allegation is sufficient at this point in the litigation to allow Plaintiff to amend the complaint to add claims against John Does 9 and 10.

In the Proposed Amended Complaint, Plaintiff alleges that Sheriff Fludd was made aware of the conditions Plaintiff complains of and failed to act. PAC at p. 12. This allegation is sufficient at this point in the action. *See, e.g., Reid v. Nassau Cty. Sheriff's Dep't,* No. 13-CV-1192, 2014 U.S. Dist. LEXIS 117471 at *18, 2014 WL 4185195 (E.D.N.Y. Aug. 20, 2014) ("Specifically, the consolidated plaintiffs' allegations, *inter alia*, that Sheriff Sposato knew about the challenged conditions at the NCCC that violated their constitutional rights, but failed to act to remedy or correct those conditions, are sufficient at the pleadings stage to state a plausible Section 1983 claim against Sheriff Sposato in his individual capacity"). Thus, the undersigned respectfully recommends that Plaintiff's motion to amend the complaint to add John Does 9 and 10 and Sheriff Fludd be granted.

A copy of this Report and Recommendation will be forwarded to Plaintiff by certified mail.

16

OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding pro se. Pro se Plaintiff must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).  Counsel for Defendants is directed to serve a copy of this Order upon *pro se* Plaintiff forthwith and file proof of service on ECF.

Dated:  Central Islip, New York
        April 15, 2020

                                              _____/s_____
                                              ARLENE R. LINDSAY
                                              United States Magistrate Judge